**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| PREHIRED LLC, *et al.*, | ) | |
| | ) | Case No. 22-11007 (TMH) |
| Debtors. | ) | |
| JOSHUA JORDAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 24-50178 (TMH) |
| | ) | |
| DON A. BESKRONE, solely in his | ) | |
| capacity as Chapter 7 Trustee, | ) | |
| | ) | |
| Defendant. | ) | |
| DON A. BESKRONE, solely in his | ) | |
| capacity as Chapter 7 Trustee, | ) | |
| | ) | |
| Counterclaim-Plaintiff and Third-Party Complaint Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUA JORDAN, | ) | |
| | ) | |
| Counterclaim-Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FOURLETTER, LLC, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

In a previous opinion, this court determined that plaintiff Joshua Jordan, the

debtors' former Chief Executive Officer, violated the automatic stay when he logged

in to a debtor bank account without authorization and withdrew the funds in the account. He then directed those funds to a business that apparently is related to Jordan, which then spent the money.[1] This court also determined that the chapter 7 trustee, Don Beskrone, acted in his official capacity when he sought to recover the funds from Jordan. Furthermore, it ruled that Beskrone's actions in this regard were "expressly permitted" and "warranted" under applicable professional conduct rules.[2]

Despite the impropriety of Jordan's actions, he has sued Beskrone for Beskrone's actions when he sought to recover the money that Jordan took from the debtors' estates.

This opinion addresses Beskrone's motion to dismiss Jordan's second amended complaint,[3] which arises out of the same underlying facts addressed in this court's prior opinion. Because Jordan fails to state any claim upon which relief can be granted, the motion to dismiss is granted.

## Factual and Procedural Background

The debtors in the underlying bankruptcy cases are Prehired, LLC, Prehired Accelerator LLC, and Prehired Recruiting, LLC. They filed petitions under

---

[1] See Jordan v. Beskrone (In re Prehired LLC), Adv. Pro. No. 24-50178 (TMH), 2025 WL 1549911 (Bankr. D. Del. May 30, 2025) (finding that lawsuit against Chapter 7 trustee Don A. Beskrone, his law firm, and one of Beskrone's law partners, was filed in violation of the Barton Doctrine). Jordan has appealed. That appeal is, as of the date of this opinion, pending in the United States District Court for the District of Delaware under case number 25-00679 (MN).
[2] Id. at *7.
[3] Second Amended Complaint [D.I. 57].

2

subchapter V of chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. Jordan, in his capacity as Chief Executive Officer of each of the debtors, signed the petitions on the debtors' behalf. He also signed the debtors' schedules and statements of financial affairs, declaring under penalty of perjury that they were true and correct.[4] Debtors' Schedule A/B identified the debtors' Wells Fargo bank accounts as "property . . . which the debtor owns . . ."[5] A month after the debtors filed the cases, venue was transferred to this court.

This court later granted the debtors' motion to convert these cases to chapter 7.[6] The United States Trustee then appointed Beskrone as the interim chapter 7 trustee.[7]

In November 2023, the court entered an order approving a settlement between the debtors, acting through Beskrone, and the State of Washington, State of Oregon, the California Department of Financial Protection and Innovation, State of Delaware, State of Minnesota, State of Illinois, State of South Carolina, State of North Carolina, Commonwealth of Massachusetts, Commonwealth of Virginia,

---

[4] Declaration Under Penalty of Perjury for Non-Individual Debtors [Main Case D.I. 13], Prehired Recruiting, LLC, Case No. 22-11005 (TMH) [D.I. 10]; Prehired Accelerator, LLC, Case No. 22-11006 (TMH) [D.I. 10].

[5] Prehired LLC Schedule A/B [Main Case D.I. 10]; Prehired Recruiting, LLC Schedule A [Case No. 22-11005 (TMH) D.I. 11]; Prehired Accelerator, LLC Schedule A [Case No. 22-11006 (TMH) D.I. 6].

[6] Second Amended Complaint, ¶ 28; Order Granting Motion of Debtors to Convert the Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code [Main Case D.I. 84].

[7] Notice to Interim Trustee/Trustee of Selection in an Asset Case [Main Case D.I. 85].

State of Wisconsin, and the Consumer Financial Protection Bureau.[8] Jordan alleges that, in connection with the settlement, the Trustee made representations to the court that he had conducted an assessment of the estate assets, that the estate did not have sufficient assets to satisfy a monetary judgment in favor of the states and against the debtors of approximately $4.25 million, that the civil judgment must be reduced from the $4.25 million to $1, and that efforts to put together all of the estate assets have been thoroughly exhausted.[9]

Jordan admits that in December 2023, he logged into a bank account held by certain of the debtors at Wells Fargo Bank.[10] Jordan also admits that he withdrew

---

[8] Second Amended Complaint, ¶¶ 17, 38–39; Order Granting Chapter 7 Trustee's Motion for an Order Approving Entry of Stipulated Judgment in Adversary Proceeding [Main Case D.I. 212]. The settlement resolved a complaint filed against the debtors [Adv. Pro. No. 23-50438]. In that complaint, the plaintiffs asserted claims against the debtors, alleging "unfair, deceptive, and abusive acts or practices" under section 1042 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. § 5552(a); section 1036(a)(1)(B) of the CFPA, 12 U.S.C. § 5536(a)(1)(B); and section 1036(a)(1)(A) of the CFPA, 12 U.S.C. § 5536(a)(1)(A). By the complaint, the plaintiffs sought injunctive and monetary relief against all the debtors. The plaintiffs and the debtors (through Beskrone) agreed to entry of a stipulated final judgment and order. See Stipulated Final Judgment and Order as to Debtors Prehired, LLC, Prehired Recruiting, LLC, and Prehired Accelerator, LLC [Adv. Pro. No. 23-50438, D.I. 15]. Under the Stipulated Final Judgment and Order, the court found that "the acts and practices [of the debtors] described in the Complaint are unfair, deceptive, or otherwise unlawful practices and violated 12 U.S.C. §§ 5531(a), (c) and 5536(a)(1)(A), (B), TILA, 15 U.S.C. § 1638(a)(2), (3), (4) and 12 C.F.R. § 1026.18(b), (d), (e), and the FDCPA, 15 U.S.C. § 1692e. Id., ¶ 21. The court also ordered a judgment in favor of the plaintiffs for monetary harm in the amount of $4,248,249.30 and a civil monetary penalty in the amount of $1. Id., ¶¶ 34, 38.

[9] Second Amended Complaint, ¶ 39.

[10] Id., ¶ 37.

$74,000 from the account and transferred the funds to a separate entity, FourLetter

LLC, which then spent the money.[11]

On October 10, 2024, the Trustee sent Jordan a letter demanding that Jordan

return the transferred funds.[12] In the demand letter, the Trustee notified Jordan

that the withdrawal was improper and unlawful and made in violation of the

automatic stay.[13] He sought return of the funds.[14] Jordan responded with a letter

acknowledging that the funds had been disbursed to FourLetter, LLC, which spent

the money, and proposing a settlement.[15] The Trustee replied to Jordan's letter,

making clear that he was not willing to negotiate and stated to Jordan that his

actions gave rise to a violation of the automatic stay and could result in criminal

liability.[16]

Three days after the Trustee's reply to Jordan, Jordan filed his initial

complaint asserting claims against the Trustee.[17] The Trustee answered and

asserted counter claims against Jordan and FourLetter, LLC.[18] Shortly before the

deadline to respond to the counter claims, Jordan filed the First Amended

Complaint.[19] The First Amended Complaint sought a declaratory judgment that the

transferred funds were not property of the bankruptcy estate and brought several

---

[11] Id.
[12] Id., ¶ 41.
[13] Id.
[14] Id.
[15] Id., ¶ 42 and Ex. 2.
[16] Id., ¶ 49 and Ex. 3.
[17] Adv. D.I. 1.
[18] Adv. D.I. 3.
[19] Adv. D.I. 8.

duty-based claims against the Trustee, seeking compensatory and punitive relief in the amount of $4,600,000.[20] On December 9, 2024, Jordan answered the Trustee's counter complaint.[21] FourLetter LLC did not respond, and a default judgment was entered against it.[22]

On January 10, 2025, Jordan dismissed the claims against Beskrone and his law partner in their individual capacities, leaving Beskrone in his capacity as chapter 7 trustee as the sole defendant.[23] Three days earlier, on January 7, 2025, Jordan filed a complaint in the United States District Court for the District of Delaware against Beskrone and his law partner, in their individual capacities.[24] The court has since issued its opinion detailing how, by filing that complaint, Jordan violated the Barton Doctrine.[25]

On April 23, 2025, after receiving leave from this court, Jordan filed his Second Amended Complaint.[26] The causes of action in the Second Amended Complaint include (i) a declaratory judgment that the Wells Fargo account and the transferred funds were not property of the estate; (ii) judicial estoppel seeking to

---

[20] Id.
[21] Adv. D.I. 6.
[22] Adv. D.I. 17.
[23] Adv. D.I. 13.
[24] Jordan v. Beskrone, Civ. A. No. 25-00023 (MN) (D. Del.).
[25] Adv. D.I. 69; Jordan v. Beskrone (In re Prehired LLC), Adv. Pro. No. 24-50178 (TMH), 2025 WL 1549911 (Bankr. D. Del. May 30, 2025).
[26] Adv. D.I. 57. As detailed in a June 9, 2025, letter to the Plaintiff, this court has found that the Second Amended Complaint contains citations to opinions that do not exist and other citations to opinions that, although real, do not plausibly stand for the propositions for which they are cited in the Second Amended Complaint. See Adv. D.I. 83. These problems are most likely attributable to the misuse of generative artificial intelligence.

estop the Trustee from claiming the transferred property as property of the estate; (iii) equitable estoppel seeking to preclude the Trustee from claiming the transferred property as property of the estate; (iv) breach of the Trustee's fiduciary duties to the estate; and (v) a finding for gross negligence and breach of the Trustee's statutory duties.[27] Jordan seeks compensatory relief and monetary damages along with declaratory relief.[28]

On May 7, 2025, the Trustee filed his Motion to Dismiss the Second Amended Complaint.[29]

## Jurisdiction

Venue is proper in this district under 28 U.S.C. § 157(a) and the Amended Standing Order of Reference dated February 29, 2012. This is a core proceeding over which this court has jurisdiction under 28 U.S.C. § 1334(b).

## Analysis

The Trustee moves to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, each of which is made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b).

Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must include a "short and plain statement" showing that the plaintiff is "entitled to relief."[30] In Iqbal and Twombly, the Supreme Court made clear that plaintiffs

---

[27] Second Amended Complaint, generally.

[28] Id.

[29] Adv. D.I. 63.

[30] Fed. R. Civ. P. 8(a)(2) (made applicable to this proceeding by Rule 7008 of the Federal Rules of Bankruptcy Procedure).

"cannot merely recite elements of a cause of action."[31] A pleading that simply recites the elements is improperly conclusory. A complaint must contain factual allegations that support the claim. Accordingly, to survive a motion to dismiss brought under Rule 12(b)(6), a complaint must "contain plausible facts which state a claim."[32] "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[33]

In the Third Circuit, courts apply a three-step plausibility test.[34] First, courts must "take note of the elements a plaintiff must plead to state a claim."[35] Second, the court must "accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions within the complaint."[36] And third, the court must determine whether the plaintiff's factual allegations are "sufficient" to support a "plausible claim for relief."[37] When considering a motion to dismiss, the court must draw "all reasonable inferences" from the properly alleged facts "in favor of the non-moving party."[38] Therefore, a claim has facial plausibility when the plaintiff pleads

---

[31] Giuliano v. Ferdinand (In re Liquid Holdings Grp., Inc.), No. 17-50662 (KG), 2019 WL 3380820, at *1 (Bankr. D. Del. July 25, 2019); see Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

[32] In re Liquid Holdings Grp., 2019 WL 3380820, at *1.

[33] Iqbal, 556 U.S. at 679.

[34] Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011).

[35] Id. (citation modified).

[36] Fowler v. UPMC Shadyside, 578 F.3d 203, 210–211 (3d Cir. 2009) (citing Iqbal, 566 U.S. at 678–79).

[37] Id. at 211 (internal quotations omitted) (quoting Iqbal, 566 U.S. at 679).

[38] Pearson v. Sec'y Dept. of Corr., 775 F.3d 598, 604 (3d Cir. 2015) (quoting Brown v. Card Serv. Ctr., 464 F.3d 450, 452 (3d Cir. 2006)).

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Jordan is appearing pro se. For that reason, his pleading is liberally construed.[39]

## I.      The funds transferred from the Wells Fargo bank account are property of the estate.

Under Count I of the Second Amended Complaint, Jordan seeks a declaration that the Wells Fargo account and the funds transferred from it are not estate property.[40] Even viewing the allegations of the Second Amended Complaint in the light most favorable to Jordan, he has not alleged facts sufficient to support this relief.

Upon the filing of a bankruptcy petition, the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."[41] "Deposits in the debtor's bank account become property of the estate under section 541(a)(1),"[42] and it is "well-settled case law" that any account held in the debtor's name, as well as any deposits credited to the debtor, are presumptively property of the estate.[43]

---

[39] Lamplugh v. PFB Energy, C.A. No. 19-218 (MN), 2020 WL 434204 at *2 (D. Del. Jan. 28, 2020).

[40] See Second Amended Complaint Adv. D.I. 57, at ¶¶ 39–46.

[41] 11 U.S.C. § 541(a)(1).

[42] Zavala v. Wells Fargo Bank, N.A. (In re Zavala), 444 B.R. 181, 188 (Bankr. E.D. Cal. 2011) (quoting 5 COLLIER ON BANKRUPTCY ¶ 541.09, at 541–51 (15th rev. ed. 2010)).

[43] FBI Wind Down Inc. Liquidating Tr. v. All Am. Poly Corp. (In re FBI Wind Down, Inc.), 581 B.R. 116, 130 (Bankr. D. Del. 2018) (quoting In re Wash. Mut., Inc., 442

Jordan has not alleged any facts adequate to state a claim that the funds in the account were not property of the estate. As this court already has found, based on Jordan's own admissions that he accessed the Wells Fargo bank account and took the funds in it, "there is prima facie evidence he intentionally violated the automatic stay of Bankruptcy Code section 362(a)(3) . . ." because in so doing, he obtained possession of property of the estate.[44]

Jordan alleges generally that "the Trustee neither gained nor attempted to gain access to these accounts, which remained under Plaintiff's control."[45] He then goes on to allege that the Trustee failed to take any action regarding the Wells Fargo account.[46] Jordan further alleges that "Wells Fargo did not recognize these accounts as being under the Trustee's control."[47] Even if these factual allegations were true, they do not change the analysis. The vesting of property with the bankruptcy estate upon the filing of a petition is self-actuating.

---

B.R. 314, 330 (Bankr. D. Del. 2011)); see also Millard Refrigerated Servs. v. LandAmerica 1031 Exch. Servs. (In re LandAmerica Fin. Grp., Inc.), 412 B.R. 800, 809 (Bankr. E.D. Va. 2009) ("In line with the broad definition of 'property of the estate,' money held in a bank account in the name of a debtor is presumed to be property of the bankruptcy estate."); Asurion Ins. Servs., Inc. v. Amp'd Mobile, Inc. (In re Amp'd Mobile, Inc.), 377 B.R. 478, 483 (Bankr. D. Del. 2007) ("Property held by a debtor is presumed to be property of the estate . . . ."); Sousa v. Bank of Newport, 170 B.R. 492, 494 (D.R.I. 1994) ("[The bankruptcy] estate includes funds held in a checking or savings account.").

[44] Jordan v. Beskrone, 2025 WL 1549911 at *7.

[45] Second Amended Complaint, ¶ 31.

[46] Id., ¶ 33.

[47] Id., ¶ 35.

In addition, each of the debtors scheduled Wells Fargo accounts as property of the estate in their Schedule A/B.[48] Jordan signed the petition and schedules under penalty of perjury, affirmatively representing that the funds were estate property.[49] Even assuming (although not deciding) that Jordan believed the account was not property of the estate, such a belief would be unreasonable and cannot form the basis of a claim that the funds were not actually property of the estate.

### A.    The Wells Fargo funds were not abandoned by the Trustee.

Property of the estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case."[50] Property of the estate can be abandoned only in the manner prescribed by section 554.[51] A consequence of abandonment is that the property no longer is property of the estate. Jordan contends that the Trustee abandoned the Wells Fargo account. This contention is insupportable on the facts alleged in the Second Amended Complaint.

Property ceases to be property of a bankruptcy estate upon the earliest of (1) the abandonment of such property under section 554, (2) the trustee's sale of such property through under section 363, or (3) a dismissal of the case under section 349(b)(3).[52] None of those conditions has occurred. These cases remain open,

---

[48] Main Case D.I. 10, Part 1 (listing Wells Fargo accounts and deposits as estate property). The court takes judicial notice of Schedule A/B.

[49] Main Case D.I. 13.

[50] 11 U.S.C. § 541(a)(1).

[51] 11 U.S.C. § 554.

[52] See In re Carpinella, 201 B.R. 34, 36 n.3 (Bankr. D. Conn. 1996); In re Zavala, 444 B.R. at 189 ("Property ceases being property of the estate when (1) it has been used or sold by a trustee pursuant 11 U.S.C. § 363, (2) disbursed pursuant to 11

and the Trustee has not sold the property; therefore, the only possible line of argument for the plaintiff is that the Trustee abandoned the Wells Fargo account.

Jordan argues that if the court were to consider the Wells Fargo funds to be property of the estate, the Trustee abandoned those funds.[53] He asserts that by failing to access the account for several years and by not changing the login credentials, the Trustee implicitly signaled an intent to abandon the funds.[54]

Jordan's argument that the funds ceased to be property of the estate because of a constructive or functional abandonment by the Trustee fails. Abandonment is governed by section 554, which provides several mechanisms by which estate property may be abandoned. None of those apply here. Section 554 provides:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
> (b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
> (c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a

---

U.S.C. § 725 or § 726, (3) abandoned pursuant to 11 U.S.C. § 554, or (4) the automatic stay is terminated to allow a lien creditor or other person having an interest in the property exercise rights which terminate the interests of the estate.").

[53] Second Amended Complaint, ¶ 46–47. Where there is abandonment of estate property, the property reverts to the debtor not the non-debtor affiliates of the debtor. Mini-Miners v. Lansberry (In re Lansberry), 177 B.R. 49, 57 (Bankr. W.D. Pa. 1995) ("Property abandoned pursuant to § 554(a) or (b) ceases to be part of the bankruptcy estate and reverts to the debtor as if no bankruptcy had ever been filed."). Estate property may not be "administratively abandoned"—i.e., abandoned without judicial involvement and order of court—pursuant to § 554(a).

[54] Plaintiff's Response Brief in Opposition to Motion to Dismiss Second Amended Complaint, at 10–11 [D.I. 64].

case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.[55]

First, Jordan does not allege that there was an abandonment under section 554(a) or (b). The record contains no evidence of an intent to abandon the property, much less the procedural steps required to effectuate that intent.[56]

Second, section 554(c) is inapplicable because this case remains open. That subsection only applies upon the closing of a bankruptcy case, at which point certain scheduled but unadministered property is abandoned to the debtor.[57]

Finally, section 554(d) provides that where there has been no abandonment under the statute and the property has not been administered in the case, the property remains property of the estate.[58] The debtors listed the Wells Fargo account in their schedules, the Trustee has not administered it, and there has been

---

[55] 11 U.S.C. § 554.

[56] See generally, In re Wilton Armetale, Inc., 618 B.R. 424, 433 (Bankr. E.D. Pa. 2020) (describing the formal process for a trustee to abandon property that belongs to the estate).

[57] In re Pilz Compact Disc, Inc., 229 B.R. 630, 637 (Bankr. E.D. Pa. 1999) ("By virtue of section 554(c), unadministered property is statutorily abandoned to the debtor at the conclusion of the case. There is little practical distinction between abandonment achieved by motion under section 554(a) and abandonment achieved by inaction under section 554(c).").

[58] "Property of the estate cannot be informally abandoned." Nilhan Devs., LLC v. Glass (In re Nilhan Devs., LLC), 631 B.R. 507, 537 (Bankr. N.D. Ga. 2021) (citing Van Curren v. Great Am. Ins. Co. (In re Hat), 363 B.R. 123, 138 (Bankr. E.D. Cal. 2007)).

no court order providing for abandonment. Accordingly, under the plain language of section 554(d), the account remains estate property.[59]

Nonetheless, Jordan argues that the Trustee constructively or "functionally" abandoned the Wells Fargo account and urges this Court to hold open the possibility that a finding of functional abandonment may be possible on equitable grounds. He is incorrect. The notion of a functional or constructive abandonment of estate property has no foundation in, and is expressly contrary to, the Bankruptcy Code.

As the Sixth Circuit held in In re Squire, abandonment under section 554 "requires affirmative action or some evidence of intent to abandon the asset by the trustee."[60] The court in In re Squire dealt with the question of whether the trustee constructively abandoned claims underlying an appeal. The court explicitly rejected the notion that abandonment of estate assets could be inferred from the trustee's inaction, explaining that even procedural decisions that might delay case administration do not establish intent to abandon.[61] Similarly, in In re Stein, the

---

[59] In re Lansberry, 177 B.R. at 56 ("Abandonment may be accomplished in a bankruptcy context in either of two ways. During the case, it may be abandoned by court order authorizing or directing abandonment (Section 554(a) or (b)). Once the case has been closed, it may be abandoned by operation of law (Section 554(c))." (citing Pace v. Battley (In re Pace), 146 B.R. 562, 564 (B.A.P. 9th Cir. 1992))).
[60] Squire v. Scher (In re Squire), 282 F. App'x 413, 415 (6th Cir. 2008).
[61] Id. at 415–16.

Ninth Circuit emphasized that abandonment cannot be presumed from a failure to act or an extended passage of time.[62]

The mere fact that the Trustee did not actively use the funds, access the account, or change its passwords does not constitute functional abandonment. Passive inaction, even over a lengthy period, is not the legal equivalent of abandonment under section 554.[63] The Bankruptcy Code contains no doctrine of abandonment by implication or neglect, nor do the equitable powers afforded to this court allow for an override of the express language of the Code.[64]

In short, Plaintiff's theory of functional abandonment is untethered to the law and cannot form the basis for relief upon which relief can be granted. Because the Wells Fargo account has not been abandoned under section 554, the account remains property of the estate.

---

[62] Stein v. United Artists Corp. (In re Stein), 691 F.2d 885, 890–91 (9th Cir. 1982) ("Unless property is abandoned or intentionally revested, title generally remains in the trustee. Abandonment requires affirmative action or some other evidence of intent by the trustee. A bankrupt alleging abandonment has the burden of proving at least the trustee's intention to abandon the asset." (citations omitted)).

[63] See In re Squire, 282 F. App'x at 415; In re Stein, 691 F.2d at 890 ("Abandonment requires affirmative action or some other evidence of intent by the trustee.").

[64] In Jordan's Reply Brief docketed at D.I. 64, he points to the court's equitable powers as a path to issue any judgments necessary to effectuate equitable justice in his favor. Section 105(a) does not give bankruptcy courts power to override other sections of the Bankruptcy Code. Here, section 554 provides the sole means of abandonment of estate property, and "although it is true that this Court is one of equity, it is also true that '[e]quity follows the law' and this Court cannot ignore the plain meaning of [§ 554], or the case law construing that statute." 17250 W. Colfax Holdings, LLC v. Koch (In re Koch), No. 09-32097-SBB, 2010 WL 1839345, at *8 (Bankr. D. Colo. Apr. 9, 2010).

The allegations set forth in the Second Amended Complaint are inadequate to set forth a plausible claim that the account was not property of the estate. Therefore, Count I of the Second Amended Complaint is dismissed.

## II.   The claim for judicial estoppel fails because it is not a cause of action.

In Count II, Jordan alleges that the Trustee is judicially estopped from asserting a position inconsistent with the one taken in the stipulated judgment.[65] Judicial estoppel, however, is an equitable defensive doctrine. It is not a vehicle for affirmative relief. Therefore, this claim fails. Again here, Jordan invokes equity as a basis upon which the court should find that judicial estoppel is a viable cause of action. The court declines this invitation to innovate. On that basis alone, Count II must be dismissed.

The doctrine of judicial estoppel prevents a party from gaining an unfair advantage by adopting inconsistent legal or factual positions in separate proceedings.[66] It is designed to protect the integrity of the judicial process, not create new rights or causes of action. In determining whether to apply judicial estoppel, courts in this circuit generally consider three factors: (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the

---

[65] New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (Under the judicial estoppel doctrine, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895))).

[66] Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996).

party succeeded in persuading a court to accept the earlier position, so that judicial acceptance of the later position would create the perception that the court was misled; and (3) whether judicial estoppel is appropriate to address the harm.[67] And, as courts have repeatedly emphasized, judicial estoppel is a shield not a sword.[68]

This court construes the Second Amended Complaint liberally, mindful that Jordan is proceeding pro se. However, even if judicial estoppel were a cause of action, Jordan fundamentally misapprehends the effect of the stipulated judgment and the meaning of administrative insolvency. He contends "[t]he Trustee cannot have it both ways–either the $74,000 was estate property (in which case the estates were not administratively insolvent when he represented they were), or the estates were administratively insolvent (in which case the $74,000 could not have been estate property)."[69] This is a non sequitur.

An estate may possess assets and still be administratively insolvent. Administratively insolvency occurs when the estate's assets are insufficient to satisfy all allowed administrative claims. The Trustee's acknowledgement that the

---

[67] <u>Mesabi Metallics Co. LLC v. Cleveland-Cliffs, Inc. (In re ESML Holdings Inc.)</u>, 135 F.4th 80, 92 (3d Cir. 2025).

[68] <u>Ussery v. Allstate Fire & Cas. Ins. Co.</u>, 150 F. Supp. 3d 1329, 1338–39 (M.D. Ga. 2015) ("The doctrine must therefore be invoked with care, since '[t]he strident and mechanical application of judicial estoppel leads it to become a sword of the defense bar rather than a shield of judicial integrity.'" (quoting <u>Thompson v. Quarles</u>, 392 B.R. 517, 529 (S.D. Ga. 2008))); <u>An-Tze Cheng v. K&S Diversified Invs., Inc. (In re An-Tze Cheng)</u>, 308 B.R. 448, 461 (B.A.P. 9th Cir. 2004), <u>aff'd and remanded sub nom.</u>, <u>K&S Diversified Invs., Inc v. Cheng (In re Cheng)</u>, 160 F. App'x 644 (9th Cir. 2005) ("In fashioning a remedy, courts should bear in mind that traditional equitable remedy is in nature of shield, not a sword.").

[69] Plaintiff's Response Brief in Opposition to Motion to Dismiss Second Amended Complaint, at 15 [D.I. 64].

$74,000 belonged to the estate is not inconsistent with his prior representations about administrative insolvency. Thus, Jordan has not plausibly alleged that the Trustee took "irreconcilably inconsistent" positions.[70]

There is no plausible allegation of a clearly inconsistent position, that the court was misled, or that an unfair advantage has been gained. Count II is dismissed.

### III.    The claim for equitable estoppel fails on its merits.

Count III is a claim for equitable estoppel. Jordan argues that the Trustee should be precluded from recovering the funds in the Wells Fargo account based on prior conduct that Jordan contends misled him regarding the status of the funds.[71]

Equitable estoppel is a remedial doctrine invoked to prevent a party from asserting rights where its conduct has misled another to his detriment.[72] It is traditionally understood as a defensive mechanism, and numerous courts have held that it is not a cause of action at all.[73] Nonetheless, there is a small body of case law

---

[70] <u>Montrose Med. Grp. Participating Sav. Plan v. Bulger</u>, 243 F.3d 773, 779 (3d Cir. 2001).

[71] Second Amended Complaint, ¶¶ 85-89.

[72] <u>United States v. Asmar</u>, 827 F.2d 907, 912 (3d Cir. 1987) ("[T]he party claiming the estoppel must have relied on its adversary's conduct in 'such manner as to change his position for the worse,' and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." (quoting <u>Heckler v. Cmty. Health Servs.</u>, 467 U.S. 51, 59 (1984))).

[73] <u>E.g.</u>, <u>Carlson v. Arnot-Ogden Mem'l Hosp.</u>, 918 F.2d 411, 416 (3d Cir. 1990) ("Equitable estoppel is not a separate cause of action. It may be raised either as an affirmative defense or as grounds to prevent the defendant from raising a particular defense."); <u>Casey v. Auto Owners Ins. Co.</u>, 273 Mich. App. 388, 399, 729 N.W.2d 277, 285 (2006) ("It is well established under Michigan law that equitable estoppel is not a cause of action unto itself; it is available only as a defense."); <u>Dobrowski v. Jay</u>

supporting the notion that Delaware state courts have recognized that equitable estoppel may, in rare circumstances, support an affirmative claim.[74] However, the doctrine is applied "cautiously, and only to prevent manifest injustice."[75] Without determining that equitable estoppel is a viable cause of action at all, for the purposes of deciding this motion, the court will assume that it is.

To state a claim for equitable estoppel, a plaintiff must allege facts pleading that: (1) he lacked knowledge, and the means of obtaining knowledge, of the truth of the facts in question; (2) he reasonably relied on the conduct of the party against whom estoppel is asserted; and (3) he suffered a prejudicial change in position as a result of that reliance.[76] Jordan's claim fails at each step of this analysis.

---

Dee Contractors, Inc., 571 F.3d 551 (6th Cir. 2009) ("[E]quitable estoppel is not a cause of action but a judicial doctrine that bars the assertion of a claim or defense.").

[74] Port Penn Hunting Lodge Ass'n v. Meyer, No. CV 2018-0328-TMR, 2019 WL 2077600, at *9 (Del. Ch. May 9, 2019), aff'd, 222 A.3d 1044 (Del. 2019) ("While equitable estoppel is traditionally employed as a defense, the doctrine is sometimes used affirmatively as a separate or alternative claim or cause of action. Many jurisdictions have refused to recognize equitable estoppel as an affirmative cause of action. The Court of Chancery, however, appears to allow affirmative equitable estoppel claims in appropriate circumstances, albeit not without some reluctance." (quoting DONALD J. WOLFE, JR. & MICHAEL A. PITTENGER, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY § 15.02[f], at 15-13 to 15-14 (2018))).

[75] Progressive Int'l. Corp. v. E.I. Du Pont de Nemours & Co., 2002 WL 1558382, at *6 n.26 (Del. Ch. July 9, 2002) ("The standards for establishing a cause of action for equitable estoppel are stringent. The doctrine is applied cautiously, and only to prevent manifest injustice.").

[76] Id.; see also Nevins v. Bryan, 885 A.2d 233, 249 (Del. Ch. 2005) ("The doctrine of equitable estoppel is invoked 'when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment.' The party claiming estoppel must demonstrate that: (i) they lacked knowledge or the means of obtaining knowledge of the truth of the facts in question;

1.    **Jordan had the knowledge and the means of obtaining additional information.**

Jordan has not adequately alleged facts establishing that he lacked knowledge or the means of obtaining knowledge of the truth of the facts in question.

He cannot plausibly claim that he lacked knowledge or the means to obtain knowledge about the status of the Wells Fargo funds. He is the former CEO of the debtors and the individual who signed the bankruptcy petition and the debtors' schedules. Those schedules expressly identified the Wells Fargo account as estate property. He was therefore not merely aware of the account's inclusion in the estate, he attested to it under penalty of perjury. Moreover, he had ample ability to confirm that the Wells Fargo account remained estate property if he felt there was some doubt.

Second, he has not identified any conduct by the Trustee on which he reasonably relied. The Second Amended Complaint does not allege any representations by the Trustee suggesting that the funds were no longer estate property or that Jordan had authority to access them. His subjective belief that the funds were his for the taking rests solely on his own unreasonable interpretation of the Trustee's behavior, not on any affirmative statement or misleading conduct by the Trustee.

---

(ii) they reasonably relied on the conduct of the party against whom estoppel is claimed; and (iii) they suffered a prejudicial change of position as a result of their reliance." (footnotes omitted) (quoting <u>Wilson v. Am. Ins. Co.</u>, 209 A.2d 902, 903–04 (Del. 1965))).

Although certain jurisdictions have held that equitable estoppel may rely upon inaction, silence, or omission of the estopped party, they also have determined that reliance on the inaction must be "reasonable and justifiable."[77]

Here, where Jordan was the debtors' CEO, where he signed the schedules identifying the account as estate property, and where he failed to make any form of inquiry or take any steps of reasonable diligence to confirm the status of the estate property, the court cannot find that any reliance was reasonable, let alone legally sufficient to support estoppel.

Third, and perhaps most crucially, Jordan has not demonstrated that he suffered a prejudicial change in position. According to the allegations, the funds from the Wells Fargo account were transferred to FourLetter, LLC, an entity apparently associated in some fashion with Jordan, and used by the company to pay what Jordan described as "legitimate business expenses."[78] Jordan does not allege that he personally expended funds, undertook liabilities, or changed position in reliance on any conduct by the Trustee.

Therefore, even if equitable estoppel is a basis for affirmative relief, Jordan does not allege facts sufficient to plausibly plead such a cause of action. Accordingly, Count III is dismissed.

---

[77] Rawlins v. Lyons, Doughty & Veldhuis, PC, No. CV 16-8598 (JBS/KMW), 2017 WL 2918917, at *3 (D.N.J. July 6, 2017).
[78] Second Amended Complaint, ¶ 37.

**IV.    The breach of fiduciary and statutory duty claims fail because the Second Amended Complaint does not allege that the Trustee breached any duty owed to Jordan, and the Trustee is entitled to qualified immunity.**

In Count IV, Jordan has alleged that the Trustee has breached certain fiduciary duties.[79] Similarly, in Count V, he alleges that the Trustee was grossly negligent in the performance of his statutory duties.[80] He alleges that the Trustee failed to collect and distribute the Wells Fargo funds to the estate beneficiaries, misrepresented that he had done so, made "threats of criminal liability" through the demand letter, "coercing compliance through intimidation," and more.[81] These allegations do not include the breach of any duty that the Trustee owed to one in Jordan's position. But even if they did, the Trustee is entitled to immunity from this claim.

The Trustee has also invoked both absolute immunity through the principle of quasi-judicial immunity and qualified immunity. In the Third Circuit, affirmative defenses may be raised at the motion to dismiss stage if the defenses are "apparent on the face of the complaint."[82] This is such a case. Jordan's claims fail because the Trustee is immune from Jordan's breach of fiduciary duties claim.

---

[79] Id., ¶¶ 146–52.
[80] Id., ¶¶ 153–61.
[81] Id., ¶¶ 150, 158.
[82] Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978).

### A.     The Trustee's Fiduciary Duties

Chapter 7 trustees owe certain fiduciary and statutory duties to stakeholders of the estate.[83] Jordan alleges that the Trustee breached his fiduciary duties of care, good faith, and loyalty and his statutory duties to collect the property of the estate, to be accountable for such property, to investigate the financial affairs of the debtors, and to close the estate consistent with the best interests of the parties in interest.[84] However, Jordan's allegations in Counts IV and V do not include allegations that the Trustee breached any duties that harmed Jordan as a creditor, such as by failing to maximize the value of the estate, but instead that the Trustee breached duties in relation to Jordan as one who violated the automatic stay and misappropriated estate assets. This is evident in the harms Jordan alleges, which all relate to the Trustee's efforts to recover the misappropriated funds.[85]

The Trustee did not owe, and therefore could not breach, any duties to one in such a position.[86] Jordan alleges that he holds something he terms "Aggregate

---

[83] See In re Marvel Ent. Grp., 140 F.3d 463, 474 (3d Cir. 1998) ("The appointment of a trustee is the installation of a court officer charged with fiduciary duties."); Phoenician Mediterranean Villa, LLC v. Swope (In re J & S Props., LLC), 872 F.3d 138, 143 (3d Cir. 2017) ("The Chapter 7 Trustee is created by Congress, appointed by and 'operating under the aegis of the U.S. Trustee,' and entrusted with the 'statutory duties . . . to gather and liquidate the property of the estate, to be accountable for the estate, ensure that the debtor performs his or her obligations,' and 'perform[ ] [other] adjudicatory and administrative functions.'" (citing Curry v. Castillo (In re Castillo), 297 F.3d 940, 950–51 (9th Cir. 2002))); 11 U.S.C. § 704 (enumerating the duties of a chapter 7 trustee).
[84] Second Amended Complaint, ¶¶ 148, 155; see also 11 U.S.C. § 704(a)(1)–(4).
[85] See Second Amended Complaint, ¶¶ 151, 159.
[86] See, e.g., In re Chi. Pac. Corp., 773 F.2d 909, 915 (7th Cir. 1985) ("[W]e think it safe to say that the Trustee's fiduciary duties did not extend beyond the [debtor]'s existent creditors and shareholders."); In re Eagle Enters., 237 B.R. 269, 273 (E.D.

Fiduciary Positions" that give rise to a "special relationship recognized in bankruptcy jurisprudence."[87] In support of this allegation, he cites to <u>In re Marvel Ent. Grp.</u>, for the proposition that "[T]he Third Circuit has specifically recognized that where a party maintains multiple legally protected interests in estate administration, trustees owe heightened duties that differ qualitatively from those owed to ordinary third parties."[88] This Court has reviewed that opinion and found that it does not support the proposition for which it was cited. As noted <u>supra</u>, it is apparent that Jordan has used citations that likely were hallucinated by generative artificial intelligence.[89] Therefore, while Jordan has opposed the motion to dismiss in part on the grounds that he has "plausibly alleged" that that the Trustee owed Jordan special duties that the Trustee violated,[90] those allegations are based on a frivolous statement regarding controlling law.

As to Count V, even if Jordan were able to establish that the Trustee's statutory duties were duties owed to him, Jordan has not adequately pleaded that such violations were the proximate cause of any damages. Jordan alleges that the

---

Pa. 1999) (discussing the duties that the trustee owes as being to the court, the debtor, and the creditors); <u>In re Ambotiene</u>, 316 B.R. 25, 37 (Bankr. E.D.N.Y. 2004) (discussing that a chapter 7 trustee's failure to fulfill their duties may result in liability to creditors based on the financial harm to the estate or to the creditors); <u>Valley Nat'l Bank v. Warren</u>, 535 F. Supp. 3d 1235, 1241 (M.D. Fla. 2021) ("While true that a trustee owes a fiduciary duty to the creditors and shareholders of an estate, adversary defendants . . . are owed no such duty . . . ."), <u>aff'd sub nom.</u>, <u>Valley Nat'l Bank v. Warren (In re Westport Holdings Tampa, Ltd. P'ship)</u>, No. 21-11767, 2022 WL 964962 (11th Cir. Mar. 31, 2022).

[87] Second Amended Complaint, ¶ 25.

[88] <u>Id.</u> (citing <u>In re Marvel Ent. Grp.</u>, 140 F.3d at 471).

[89] <u>See</u> <u>supra</u> text accompanying note 26.

[90] Plaintiff's Response Brief in Opposition to Motion to Dismiss Second Amended Complaint, at 3, 22, and 28 [D.I. 64].

Trustee breached his statutory duties to secure and account for the assets of the estate through his handling of the Wells Fargo account and his representations to the court regarding the estate funds.[91] Put differently, Jordan appears to allege that the Trustee failed to protect estate assets against Jordan himself.

The harms Jordan alleges are related to the Trustee's efforts, taken pursuant to these same statutory duties, to collect the funds that Jordan misappropriated.[92] To establish proximate cause, one must show a "natural and continuous sequence" between the alleged breach and harms.[93] Here, the harms do not stem from the Trustee's alleged breach of statutory duties, but instead from Jordan's own behavior in misappropriating estate property and the Trustee's actions to collect it.

### B.   Qualified and Quasi-Judicial Immunity

Qualified immunity, or the "good faith" defense, is a defense that may be invoked by bankruptcy trustees against personal liability for acts taken within their authority as court officers.[94] The Third Circuit in J&S Properties, LLC determined that where a trustee takes measures to uphold her statutory duties to protect and preserve the estate property, the trustee possesses immunity in carrying out her role, unless a plaintiff can make a showing "'(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of

---

[91] See Second Amended Complaint, ℙ 155–58.
[92] See Second Amended Complaint, ℙ 159.
[93] RBC Cap. Mkts., LLC v. Jervis, 129 A.3d 816, 864 (Del. 2015).
[94] Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982) ("Qualified or "good faith" immunity is an affirmative defense that must be pleaded by a defendant official."); In re J & S Props., LLC, 872 F.3d at 143 ("It appears clear that Chapter 7 Bankruptcy Trustees like Swope are government officials for purposes of Harlow.").

the challenged conduct.'"[95] In that case, the chapter 7 trustee used the sole key to a

commercial property, which was deemed property of the estate, to limit the access of

the current tenant. The tenant brought an action for violation of the tenant's

constitutional rights. The court held that the trustee was protected by qualified

immunity because her actions were not "plainly incompetent and did not violate

clearly established law."[96] Further, her actions in limiting the tenant's access to

estate property were made in furtherance of her statutory duties to protect and

preserve estate interests.[97]

Here, Jordan's allegations relate to actions the Trustee undertook in

administering the bankruptcy estate—specifically, addressing Jordan's

unauthorized taking of estate funds and communicating with Jordan regarding

those assets. Jordan alleges that the Trustee violated Bankruptcy Code

section 704(a) by mishandling estate property and violated various provisions of

The Department of Justice's Handbook for Chapter 7 Trustees in attempting to

recover the assets. As to the former, the Second Amended Complaint does not

sufficiently allege that the Trustee took any actions that violated his duties under

section 704(a) or otherwise violated the statute, which does not require the trustee

to take physical possession. As to the latter, the handbook does not establish any

---

[95] In re J & S Props., LLC, 872 F.3d at 143 (quoting Mammaro v. N.J. Div. of Child
Prot. & Permanency, 814 F.3d 164, 168–69 (3d Cir. 2016)).
[96] Id.
[97] Id. at 144.

statutory rights.[98] The Trustee's actions were taken in furtherance of his duties as a trustee and did not violate any clearly established law, so he is entitled to qualified immunity.

Additionally, the Trustee argues that he is shielded from liability by quasi-judicial immunity. Quasi-judicial immunity is a form of absolute immunity that is extended to judges and those performing quasi-judicial functions.[99] Trustees are entitled to quasi-judicial immunity from suits brought by third parties where a trustee performs discretionary actions within the scope of their duties.[100] However, where the trustee has acted with gross negligence, trustees are not entitled to this type of immunity because the negligent actions are outside of the scope of their

[98] See In re Hecker, No. 21-3178, 2022 WL 2816799, at *1 (3d Cir. July 19, 2022) ("[T]he Handbook does not set forth statutory requirements.").

[99] See, e.g., Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 436 (1993); Grant, Konvalinka & Harrison, PC v. Banks (In re McKenzie), 716 F.3d 404, 412 (6th Cir. 2013) ("Judges enjoy absolute immunity from suit for money damages for actions taken in their judicial capacity, except when taken in the complete absence of jurisdiction. Extension of such immunity to officials performing quasi-judicial duties has been recognized for 'those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune.'" (quoting Bush v. Rauch, 38 F.3d 842, 847 (6th Cir. 1994))).

[100] In re J & S Props., LLC, 872 F.3d at 151 (Fisher, J., concurring); In re McKenzie, 716 F.3d at 418 ("A trustee sued by third parties for actions taken in his official capacity on behalf of the estate and within the scope of the authority granted by statute or court order, is entitled to quasi-judicial immunity."); Carrillo v. Wieland, 527 F. App'x 754 (10th Cir. 2013) (claims against the trustee were barred by judicial immunity where the defendants did not claim the trustee exceeded the role of the trustee or acted outside the scope of their authority); see generally In re Castillo, 297 F.3d at 946–50, as amended (Sept. 6, 2002) (discussing the common law origins of quasi-judicial immunity for bankruptcy trustees, which extends to "those functions that involve discretionary judgment").

authority.[101] Whether the Trustee has acted with gross negligence is a question of fact which may not properly be determined on a motion to dismiss, so the court cannot determine at this stage whether the Trustee is shielded by quasi-judicial immunity.[102]

Therefore, the Trustee is entitled to qualified immunity for all his alleged actions. Counts IV and V are dismissed.

### Conclusion

For the foregoing reasons, the Second Amended Complaint is dismissed.

Dated: December 12, 2025

_____
Thomas M. Horan
United States Bankruptcy Judge

---

[101] See Yadkin Valley Bank & Tr. Co. v. McGee (In re Hutchinson), 819 F.2d 74, 76 (4th Cir. 1987); Liberty Mut. Ins. Co. v. United States of Am. by Lamesa Nat'l Bank (In re Schooler), 725 F.3d 498, 511 (5th Cir. 2013); Quinn v. Fidelity & Deposit Co. of Md. (In re Sturm), 121 B.R. 443, 448 (Bankr. E.D. Pa. 1990).
[102] See, e.g., In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 546 (D.N.J. 2004).